UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PRISCILLA McCRIGHT, ET AL          CIVIL ACTION NO. 14-cv-2237

VERSUS                              JUDGE HICKS

SMITH & NEPHEW, INC.                MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Priscilla McCright suffered serious complications after surgery. She and her husband ("Plaintiffs") blamed the complications on both her healthcare providers and the manufacturer of a medical device used during her treatment. They filed this products liability action in state court against the manufacturer of the medical device, and the manufacturer removed the case based on diversity jurisdiction. At about the same time, Plaintiffs filed a medical review panel proceeding that is a Louisiana-law prerequisite to filing a medical malpractice suit against the healthcare providers.

The medical review panel recently issued its decision, which allowed Plaintiffs to file suit on their medical malpractice claims. Plaintiffs then filed a Motion for Leave to File Amended Complaint (Doc. 14) to add malpractice claims against the two physicians and the hospital. The proposed amended complaint would also add a new products liability claim against the manufacturer of a second medical device and the company that leased the two devices to the hospital.

The addition of the two physicians and hospital would destroy diversity jurisdiction because they and Plaintiffs share Louisiana citizenship. The original manufacturer defendant objects to the amendment and the remand it would require. For the reasons that follow, it is recommended that leave be granted to add the new defendants and this case be remanded for lack of subject-matter jurisdiction.

**Relevant Facts**

Dr. James Howell performed surgery on Priscilla McCright at Willis-Knighton Bossier to repair an abdominal hernia. Dr. Howell then left for a family vacation. Two days after Ms. McCright was discharged, she visited Dr. Howell's partner, Dr. Banda, and complained that she did not feel well, had blisters near her incision, and was in pain. Plaintiffs allege that Dr. Banda told Ms. McCright that everything was fine.

Ms. McCright had a high fever the next day and was very ill. Dr. Banda instructed that she should go to the emergency room if she felt sick. Ms. McCright did go to the emergency room and was admitted to Willis-Knighton hospital, where she stayed for several days. Her hospital treatment included the use of two negative pressure wound therapy systems. One was manufactured by original defendant Smith & Nephew, and the other was manufactured by proposed new defendant Acelity, LP, Inc. Both devices were leased to Willis-Knighton by proposed new defendant Universal Hospital Services, Inc. Dr. Howell returned from his vacation and performed debridement surgeries to treat the problems.

Louisiana law generally provides that a plaintiff may not file suit against a healthcare provider for malpractice unless the proposed complaint has first been presented to a medical

review panel and an opinion is rendered by the panel. Filing a request for panel-review of a claim against a healthcare provider suspends the running of prescription against all joint and solidary tortfeasors, but if it is ultimately determined that the healthcare provider is not liable, then there may not have been a suspension, and claims against persons once thought to be joint tortfeasors could be prescribed. Because of this and other concerns, counsel for a plaintiff often takes the cautious approach of not awaiting the outcome of the panel proceedings before filing a timely civil action against the manufacturer of a medical device that is allegedly at fault in connection with the same incident. See Johnson v. Scimed, Inc., 92 F.Supp. 2d 587, 589 (W.D. La. 2000).

Plaintiffs requested on March 5, 2014 the formation of a medical review panel to evaluate their claims against Dr. Howell, Dr. Banda, and Willis-Knighton. They filed a products liability suit against Smith & Nephew in state court approximately three months later, on June 9, 2014. Smith & Nephew promptly removed that case to this court. A scheduling conference was set, and the parties were directed to file a Rule 26(f) case management report which asked, among other things, whether the parties anticipated seeking leave to add parties. Plaintiffs stated generally that they "may seek leave to amend a pleading or add a party." When asked to describe briefly the anticipated amendments or potential new parties, Plaintiffs stated that they might add as a defendant the lessee of the device at issue. Plaintiffs did not mention the medical malpractice defendants in that report. The parties proceeded to engage in discovery. Smith & Nephew represents that they exchanged initial disclosures, Plaintiffs responded to 30 interrogatories and 25 requests for

production, Smith & Nephew responded to similar written discovery, and the parties have taken nine depositions.

The medical review panel issued its decision on May 11, 2015. Plaintiffs reported this fact at a status conference on July 1, 2015 and stated that they intended to file a motion to amend and add the medical malpractice defendants. Doc. 13. Plaintiffs then filed their motion for leave to amend within a 10-day deadline set by the court.

**Analysis**

If after removal a plaintiff seeks to join a new defendant whose joinder would destroy subject matter jurisdiction, the court may (1) deny joinder or (2) permit joinder and remand the case. 28 U.S.C. § 1447(e). The court's decision of the issue is guided by the factors set forth in Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir. 1987). See also Cobb v. Delta Exports, Inc., 186 F.3d 675, 678-79 (5th Cir. 1999). Although leave to amend is ordinarily freely granted, Hensgens instructs that when a district court is faced with an amendment that adds a non-diverse party it "should scrutinize that amendment more closely than an ordinary amendment." Id. at 1182.

The court must balance the removing defendant's interest in maintaining the federal forum with the competing interest of not having parallel lawsuits. Factors to be considered include (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other

factors bearing on the equities.  Hensgens, 833 F.2d at 1182; Hawthorne Land Co. v. Occidental Chemical Corp., 431 F.3d 221, 227 (5th Cir. 2005).

Plaintiffs have an objectively good-faith reason to amend the complaint and add the newly ripened malpractice claims, and Smith & Nephew has not pointed to any evidence or grounds to infer that the request to amend is motivated in any significant part by an intent to defeat federal jurisdiction.  Smith & Nephew also acknowledge "that the Plaintiffs have not been dilatory in requesting leave to amend" with respect to the malpractice defendants.  Plaintiffs may not have mentioned the malpractice claims in their Rule 26 report, but they raised the issue promptly after the malpractice claims ripened.

Smith & Nephew argue that amendment should nonetheless be denied because it will be prejudiced by losing its federal forum and having to repeat discovery that it has taken.  The loss of the federal forum is why the other factors are considered in making this decision, but the mere fact that it may happen does not justify denying leave to amend.  Otherwise, there would be no Hensgens analysis; all such motions would be denied.  Smith & Nephew argues that a remand will require it to repeat the discovery that has been exchanged and taken during the federal proceedings, and it even cites some district court decisions that state such concerns in similar situations.  Smith & Nephew has not explained, however, why the depositions and information learned by written discovery cannot be used in state court if this case is remanded.  It may be that some of the depositions will need to be retaken because of the addition of new parties and claims, but that happens in any case where new parties are


added, even if the forum is unchanged.

Smith & Nephew argues that Plaintiffs will not be significantly injured if amendment is denied because Plaintiffs can proceed with their malpractice claim in state court while this products liability action proceeds in federal court. Smith & Nephew contends that having two lawsuits on the same subject matter will actually promote judicial efficiency and prevent confusion of the issues. The undersigned believes that the opposite is true.

The discovery, motion practice, and legal issues in the two lawsuits will overlap to a great extent and require that two court systems deal with similar litigations that arise from one course of treatment and related damages. There is also a serious risk of inconsistent decisions or verdicts. A jury in either case will be required to assess the amount of damages and comparative fault, including fault attributable to persons not named as defendants in the suit. La. Civ. Code art. 2323; Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism, 828 So.2d 530 (La. 2002) (fault had to be attributed to both defendant whose pothole caused accident and non-party healthcare providers who treated the plaintiff). The malpractice defendants in state court would likely point to the empty chair for the products defendants, and the opposite would likely happen before the jury in this court. The two juries could also reach different results when assessing the amount of damages. The two-track litigation advocated by Smith & Nephew could result in a great deal of duplication of efforts for state and federal judges, juries, and court systems, as well as a significant risk of inconsistent decisions on key legal issues and the final verdicts. Those factors weigh heavily in favor of allowing joinder, even if the price is the federal forum selected by Smith & Nephew.

Magistrate Judge Payne discussed this common scenario in Johnson v. Scimed and stated that the diversity-based federal suit against the products manufacturer almost inevitably runs into a motion for leave to amend and add the non-diverse doctors and hospitals after conclusion of the medical review panel proceedings "so that all of the closely interrelated claims arising out of the [patient care] can, quite sensibly, be litigated in one proceeding." Johnson, 92 F.Supp. 2d at 591. He added that "a conscientious application of the Hensgens factors usually compels the court to permit the joinder of those defendants" which mandates that the entire case be remanded to state court. Id.[1] That result is warranted in this case.

**Conclusion**

Smith & Nephew has no evidence that Plaintiffs are seeking the amendment for an improper purpose, and it concedes that Plaintiffs have not been dilatory. Smith & Nephew's concerns about wasted discovery efforts have not been demonstrated to be well founded, and the undersigned does not find persuasive its argument that denial of leave to amend will promote judicial efficiency or prevent confusion. The opposite appears to be true, and to the

---

[1] Johnson v. Scimed was a case that involved removal and improper joinder when the diverse device manufacturer was sued in state court along with the prematurely joined non-diverse malpractice defendants. That situation, not present in this case, has been troublesome for the courts for many years. The Fifth Circuit recently voted to review en banc a case that may resolve the issue. Flagg v. Stryker Corporation, 801 F.3d 456 (5th Cir. 2015), rehearing granted, 2015 WL 6805583 (5th Cir. 11/5/15).

extent that those factors strongly support allowing leave to amend even though it will result in a loss of the federal forum that Smith & Nephew validly selected at the time of removal.

Accordingly,

**IT IS RECOMMENDED** that Plaintiffs' **Motion for Leave to File First Amended Complaint (Doc. 14)** be **granted** and that this case be **remanded** for lack of subject-matter jurisdiction to the 26th Judicial District Court, Bossier Parish, Louisiana, where this suit was pending as Case No. 144585.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of December, 2015.

Mark L. Hornsby
U.S. Magistrate Judge