UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PRISCILLA McCRIGHT, ET AL               CIVIL ACTION NO. 14-cv-2237

VERSUS                                  JUDGE HICKS

SMITH & NEPHEW, INC.                    MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

  Priscilla McCright suffered serious complications after surgery. She was admitted to the hospital, where she was treated with two different negative pressure wound therapy systems, or wound vacs. Ms. McCright and her husband ("Plaintiffs") filed this products liability action in state court against Smith & Nephew, the manufacturer of one of the wound vacs. Smith & Nephew removed the case based on diversity jurisdiction.

  At about the same time they filed this suit, Plaintiffs filed a medical review panel proceeding against the hospital and two physicians who provided the treatment. The medical review panel process is now completed, which allows Plaintiffs to file suit against those providers. Before the court is Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 32) that proposes to add as new defendants the hospital and the two physicians. The proposed amendment would also add as defendants the company that leased the wound vacs to the hospital and the company that manufactured the other wound vac used in the treatment. Smith & Nephew opposes the proposed amendment because the addition

of the other wound vac manufacturer would destroy diversity of citizenship and require remand to state court. For the reasons that follow, it is recommended that leave to amend be granted and that this case be remanded.

**Hensgens and the Proposed Amendment**

If after removal a plaintiff seeks to join a new defendant whose joinder would destroy subject matter jurisdiction, the court may (1) deny joinder or (2) permit joinder and remand the case. 28 U.S.C. § 1447(e). The court's decision of the issue is guided by the factors set forth in Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir. 1987). See also Cobb v. Delta Exports, Inc., 186 F.3d 675, 678-79 (5th Cir. 1999). Although leave to amend is ordinarily freely granted, Hensgens instructs that when a district court is faced with an amendment that adds a non-diverse party it "should scrutinize that amendment more closely than an ordinary amendment." Id. at 1182.

The court must balance the defendant's interests in maintaining the federal forum with the competing interest of not having parallel lawsuits. Factors to be considered include (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities. Hensgens, 833 F.2d at 1182; Hawthorne Land Co. v. Occidental Chemical Corp., 431 F.3d 221, 227 (5th Cir. 2005).

**Relevant Facts**

Ms. McCright had surgery in June 2013 at Willis-Knighton Bossier. The surgery was performed by Dr. James Howell, who went out of town soon after the surgery and left Ms. McCright under the care of his partner, Dr. Michael Banda. Ms. McCright alleges that she developed blisters and pain in the area of her surgical incision, but Dr. Banda assured her that everything was fine. McCright eventually reported to the emergency room, and she was admitted to the hospital.

Ms. McCright, after she was hospitalized, was treated with two different wound vacs. The first was a "KCI pump" that was allegedly manufactured by proposed new defendant Acelity, LP, Inc. ("KCI"). That device was used for only three days, but it allegedly triggered several alarms to indicate that it was not functioning properly. The healthcare providers switched to a Smith & Nephew wound vac, which allegedly functioned inconsistently and had recurring problems during the two weeks it was used. Ms. McCright says that she began to heal only after the wound vac was no longer used. Willis-Knighton leased both of the wound vacs from proposed new defendant Universal Hospital Services, Inc. ("UHS").

Plaintiffs filed a medical review panel proceeding against Dr. Howell, Dr. Banda, and Willis-Knighton in March 2014. The review panel process is a Louisiana-law prerequisite to filing a medical malpractice suit in court. A few months later, in June 2014, Plaintiffs filed this suit in state court against a single defendant, Smith & Nephew, which removed the

case based on an assertion of diversity of citizenship between the Texas plaintiffs and Smith & Nephew (Delaware and Tennessee).

The parties filed a Case Management Report (Doc. 9) in which Plaintiffs stated that they might seek leave to amend to add UHS, and the parties stated that this was a highly complex case that could present issues of product identification. The parties began taking discovery, and the undersigned monitored the proceedings with status conferences, but the court did not impose a formal scheduling order or select a trial date. The parties reported that they were engaging in depositions and obtaining voluminous medical records. Smith & Nephew represented that the parties exchanged initial disclosures, Plaintiffs responded to 30 interrogatories and 25 requests for production, Smith & Nephew responded to similar written discovery, and the parties took nine depositions.

The court set a conference and advised the parties to be prepared to select a trial date and related deadlines. Doc. 12. The parties reported at that conference on July 1, 2015 that the medical review panel had acted on the malpractice claims in May 2015, and Plaintiffs intended to move to amend to add the healthcare providers as defendants in this case. The court set a deadline for the proposed amendment and directed the parties to address any Hensgens issues related to the proposed amendment. Further scheduling was deferred pending a resolution of the motion to amend. Doc. 13.

Plaintiffs promptly filed their motion for leave to amend and proposed to add not only the healthcare providers but also KCI and UHS. All parties originally briefed the motion as if Plaintiffs were Louisiana citizens and the addition of the Louisiana healthcare providers

would destroy diversity, and a great deal of time was wasted along that path. Smith & Nephew eventually pointed out that Plaintiffs were citizens of Texas, so there appeared to be complete diversity of citizenship between Plaintiffs and all of the proposed defendants with the exception of KCI. The record was not clear as to the citizenship of KCI and some of the other parties, so the court denied the proposed amendment as presented, but without prejudice to being resubmitted with specific allegations of the citizenship of each party and a briefing of the Hensgens factors if applicable. Doc. 26.

The Plaintiffs returned with the motion for leave to amend that is now before the court. They allege that they are citizens of Texas, the two physicians are citizens of Louisiana, and Willis-Knighton Medical Center is a corporation with its principal place of business in Louisiana. Plaintiffs' proposed pleading does not specify the state in which Willis-Knighton was incorporated, but the Secretary of State's records indicates that it was incorporated in Louisiana. Plaintiffs allege that UHS is a Delaware corporation with its principal place of business in Minnesota.

The only potential obstacle to complete diversity of citizenship is KCI. Plaintiffs originally described this defendant only as a "foreign entity," and Smith & Nephew stated its belief that the entity was a Texas corporation with its principal place of business in Texas. The court pointed out in a prior order that online SEC filings and other resources indicate that the company may actually be a non-operating holding company organized under Guernsey law with its principal executive offices in San Antonio. Plaintiffs were directed to determine whether they had named the correct defendant and to make specific allegations about its form

of entity and citizenship if they proposed a second amendment. Plaintiffs' latest pleading describes the entity as "a foreign corporation and non-operating holding company with its principal place of business in San Antonio, Texas." Plaintiffs did not specifically allege where KCI was incorporated, but what allegations they do offer suggest that there is not diversity of citizenship between Plaintiffs and KCI because they are all Texas citizens.

**Analysis**

One of the Hensgens factors asks whether the plaintiffs have been dilatory in asking for the amendment. The facts relevant to that factor are also often relevant to another factor, whether the purpose of the proposed amendment is to defeat federal jurisdiction. Smith & Nephew argues that Plaintiffs knew before they filed suit that more than one wound vac was used, but Plaintiffs chose to sue only Smith & Nephew. The defense argues that Plaintiffs had a duty to investigate to determine the identity of the manufacturer of the other wound vac, and such an investigation would have allowed Plaintiffs to name KCI more timely so that KCI could have participated in the discovery taken thus far.

Smith & Nephew point to 30(b)(6) testimony from Willis-Knighton that the hospital switched from the KCI wound vac to Smith & Nephew in 2013. Another witness testified in a deposition that Ms. McCright may have been the first Willis-Knighton patient to receive a Smith & Nephew wound vac. Smith & Nephew argues that this should have indicated to Plaintiffs that a KCI wound vac was used during the treatment, but Plaintiffs waited almost eight months after those depositions before they first moved to add KCI as a defendant.

Plaintiffs respond that they were required to wait for the medical review panel proceedings to be completed before they could add the healthcare providers as defendants, and they moved to file their amendment promptly after it was allowed. But that does not explain why they did not sue KCI earlier in the proceedings. The products liability claim against KCI was not subject to the medical review process requirement and could have been brought at any time once KCI was identified.

It appears that Plaintiffs had information that identified KCI as a potential defendant a few months before Plaintiffs filed their motion for leave to amend. There is no indication, however, that Plaintiffs had sufficient information when they filed their original suit in state court, or any time before removal, to name KCI as a defendant. It is that situation in which delay is most often held against a plaintiff in a Hensgens analysis. Neely v. Scottsdale Ins. Co., 2014 WL 1572441,*6 (E.D. La. 2014) (plaintiff was dilatory in seeking amendment where he waited nearly eight months to seek leave to add defendants whose existence he was aware of when he filed suit in state court). Plaintiffs are not often found dilatory or to possess intent to destroy diversity if they did not know of the proposed defendant's existence or identity before removal. Plaintiffs in this case were not dilatory in a manner that would count against them in the Hensgens assessment.

Hensgens looks to, as noted, the extent to which the purpose of the proposed amendment is to defeat federal jurisdiction, as well as whether Plaintiffs will be significantly injured if the amendment is denied. There is little if any indication that Plaintiffs' intended purpose of the proposed addition of KCI was to defeat federal jurisdiction. Their original

proposed amended complaint did not even identify KCI as a diverse-destroying party, and even Smith & Nephew briefed the first motion with an assumption that the addition of KCI and UHS would not destroy diversity. Any argument that Plaintiffs' intended purpose of the amendment was to defeat jurisdiction is also undermined by the objectively sound reasons that exist for Plaintiffs to add KCI. Those reasons include the alleged evidence that the KCI equipment frequently sounded alarms that it was not functioning properly and a desire to avoid the "empty chair" issue discussed below.

Smith & Nephew argues that Plaintiffs will not be significantly injured if the addition of KCI is denied because Plaintiffs can proceed with their claim against KCI in state court while this case against the other several defendants proceeds in federal court. Smith & Nephew contends that having two lawsuits on the same subject matter will actually promote judicial efficiency and prevent confusion of the issues. Joint tortfeasors do not have to be named as defendants in a single lawsuit. Temple v. Synthes Corp., Ltd., 111 S.Ct. 315 (1990) (permitting medical products claim to proceed in federal court even though the plaintiffs chose to file their medical malpractice claims against the doctor and hospital in state court). But the undersigned is of the strong opinion that splitting the litigation in that way will do the opposite of promoting judicial efficiency and preventing confusion.

The discovery, motion practice, and legal issues in the two lawsuits will overlap to a great extent and require that two court systems deal with similar litigations that arise from one course of treatment and related damages. There is also a serious risk of inconsistent decisions or verdicts. The judge or jury in each case would be required to assess the total

amount of damages and comparative fault, including fault attributable to persons not named as defendants in the suit before that court. La. Civ. Code art. 2323; <u>Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism</u>, 828 So.2d 530 (La. 2002) (fault had to be attributed to both defendant whose pothole caused accident and non-party healthcare providers who treated the plaintiff). Some or all of the defendants in federal court would likely point to KCI's undefended "empty chair" and blame it for some or all of the damages. Meanwhile, KCI would be in state court pointing the finger at the absent manufacturer and healthcare defendants who would be defendants in this federal case.

Plaintiffs represent that Smith & Nephew has already suggested during discovery that it will attempt to blame the KCI wound vac. Plaintiffs point to questions in depositions in which Smith & Nephew ask Ms. McCright questions such as, "And this was all from the first wound vac that was placed on you initially?"; "Do you know who manufactured the first wound vac that was placed on you initially?"; and "So all the problems you were experiencing were all with the wound vac that was placed on you initially when you first got to Willis-Knighton Bossier?" Smith & Nephew also argued in an earlier brief, "Before the Smith & Nephew wound vac was applied, Ms. McCright already had a dangerous and possibly fatal infection."

There is a good indication that the two-track litigation advocated by Smith & Nephew would result in fingers pointing to an empty chair in each court system, as well as a great deal of duplication of efforts for state and federal judges, juries, and court systems. There would also be a significant risk of inconsistent decisions on key legal issues and the final verdicts.

Those factors weigh heavily in favor of allowing joinder, even if the price is the federal forum selected by Smith & Nephew.

Hensgens allows consideration of any other factors bearing on the equities. Smith & Nephew argues that amendment should be denied, despite the factors discussed above, because it will be prejudiced by losing its federal forum. The loss of the federal forum is why the other factors are considered in making this decision. The mere fact that the loss may happen does not justify denying leave to amend. If it did, there would be no Hensgens analysis; all such motions to amend would be denied.

Smith & Nephew also argues that the amendment should be denied because a remand will require it to repeat the discovery that has been exchanged and taken during the federal proceedings, and it even cites some district court decisions that state such concerns in similar situations. Smith & Nephew has not explained, however, why the depositions and information learned by the exchange of written discovery cannot be used in state court if this case is remanded. It may be that some of the depositions will be retaken because of the addition of new parties and claims, but that potential exists in any case when new parties are added after discovery commences, even if the forum is not changed. It is also going to happen in this case even if KCI is not added as a defendant. There is no reasonable basis for the court to deny Plaintiffs' requested to add as new defendant the two physicians, Willis Knighton Hospital, and UHS, all of whom are of diverse citizenship and will be just as likely as KCI to want to question witnesses who may have already been deposed. Accordingly, the concerns about possibly repeating some depositions are of little weight.

**Conclusion**

Plaintiffs have an objectively good-faith reason to amend the complaint and add KCI as a defendant, and Smith & Nephew has not pointed to any evidence or grounds that suggest the request to amend is motivated in any significant part by an intent to defeat federal jurisdiction. Plaintiffs could have perhaps moved to add KCI a few months earlier in the case, but there is no indication they had the necessary knowledge to name KCI before removal. Once Plaintiffs learned the identity of KCI and connected it to the other wound vac, they acted with reasonable promptness to make KCI a defendant. Having all potentially responsible defendants in one case in one forum will avoid the potential for wasted resources and inconsistent legal proceedings. The proposed addition of KCI, even though it destroys diversity and requires remand to state court, is the best exercise of this court's discretion under Hensgens.

Accordingly,

**IT IS RECOMMENDED** that Plaintiffs' **Motion for Leave to File Second Amended Complaint (Doc. 32)** be **granted**.

**IT IS FURTHER RECOMMENDED** that, because the addition of a non-diverse defendant will destroy subject-matter jurisdiction, this case be **remanded** to the 26th Judicial District Court, Bossier Parish, Louisiana, where it was pending as Case No. 144585.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of May, 2016.

Mark L. Hornsby
U.S. Magistrate Judge